NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COLONY INSURANCE COMPANY,<br>*Plaintiff*,<br><br>v.<br><br>61 KULLER ROAD LLC, CHANGSUK SEO, and MIYOUNG LEE,<br>*Defendants*.<br><br>and<br><br>61 KULLER ROAD LLC,<br>*Third-Party Plaintiff*,<br><br>v.<br><br>PENN AMERICA INSURANCE COMPANY, CENTURY SURETY COMPANY, JD PHOENIX INC.,<br>*Third-Party Defendants*. | Civil No.: 24-5621 (KSH) (CLW)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.   Introduction**

This insurance coverage dispute is before the Court on the motion to amend filed by defendant/third-party plaintiff 61 Kuller Road LLC ("Kuller") (D.E. 51) and the motions to dismiss filed by third-party defendants Penn-America Insurance Company ("Penn-America") (D.E. 28) and Century Surety Company ("Century") (D.E. 40).  For the reasons set forth below, Kuller's motion to amend will be granted, and Penn-America's and Century's motions to dismiss will be granted, but without prejudice to Kuller filing amended claims against them.

**II.   Background**

The coverage dispute arises from a warehouse construction project in Clifton, New Jersey.  (D.E. 1, Compl. ¶ 28.)  The relevant pleadings allege as follows.  Kuller is the property's

1

owner. (*Id.*)  Changsuk Seo ("Seo") was employed by third-party defendant JD Phoenix, Inc. ("Phoenix"), the general contractor on the project.  (*Id.*)  On June 11, 2021, Seo was injured when lumber fell on him.  (*Id.* ¶ 29.)  Seo and his wife, Miyoung Lee, sued Kuller and others in Bergen County Law Division on June 9, 2023, alleging negligence.  (*Id.* ¶¶ 27, 30 & Ex. C.)

Colony Insurance Company ("Colony"), the plaintiff in this federal action, issued two liability insurance policies to Kuller, one primary and one excess.  (*Id.* ¶¶ 18, 19, 24.)  The primary policy contains a "Designated Contractor Warranty Endorsement," which states that "For any 'contractor(s)' not specified in the SCHEDULE above, the insured must comply with" various specified conditions, and if it doesn't, Colony has no duty to defend or indemnify "any insured."  (*Id.* ¶¶ 21-23.)  There is no "Designated Contractor" listed in the referenced schedule. (*Id.* ¶ 21; *see also* Compl., Ex. A, at page 66 of 74,[1] "Designated Contractor Warranty" endorsement of Colony primary policy.)

Among the "conditions precedent" to coverage for Kuller for non-scheduled contractors is that the contractor "has maintained 'adequate insurance,'" which is defined to include commercial general liability limits of $3 million per occurrence, $4 million in the aggregate, coverage for bodily injury arising out of the contractor's work, and no exclusions for claims arising out of bodily injury to the contractor's workers.  (*Id.* ¶ 21 (quoting endorsement).)

The Colony excess policy is subject to the same exclusions as the primary policy.  (*Id.* ¶ 26.)

Ten days after the Underlying Action was filed, Kuller reported it to Colony in a notice of loss, which Colony acknowledged on June 21, 2023.  (*Id.* ¶¶ 31-32.)  Colony responded in a reservation of rights letter that, according to the complaint, stated that it was investigating the

---

[1] This page reference is to page numbers assigned by the CM/ECF system.

availability of coverage under the Colony policy issued to Kuller, "including whether Kuller complied with all of the conditions precedent to coverage under the [policy's] Contractor Warranty Endorsement." (*Id.* ¶ 32.)[2] Colony then undertook to defend Kuller in the Underlying Action, subject to the reservation of rights. (*Id.*)

On June 26, 2023, Colony tendered the Underlying Action to Phoenix and to Western World Insurance Company, which Colony apparently believed, at least initially, to be Phoenix's primary liability insurer. (*See id.* ¶ 33.) Colony sought defense and indemnification based on Kuller's status as an additional insured under Phoenix's policy with Western World. (*Id.*) Western World advised Colony that Phoenix's policy had been canceled on April 3, 2020, before the incident involving Seo, which meant no coverage was available to either Phoenix or Kuller. (*Id.* ¶ 35.)[3]

Also on June 26, 2023, Colony tendered the Underlying Action to Phoenix's excess insurer, third-party defendant Century. Colony sought indemnification based on Kuller's additional insured status under Phoenix's policy with Century. (*Id.* ¶ 34.) On October 9, 2023, Century notified Colony that the Century policy to Phoenix applied "in excess of a $1 million primary policy issued by Penn-America Insurance Company," and that no coverage from Century was available because the policy contained an exclusion for injury sustained by Phoenix's employees. (*Id.* ¶ 36.) The Penn-America policy "apparently replaced the canceled Western World policy." (*Id.* ¶ 36.)

---

[2] The letter itself is not attached to the complaint.
[3] The complaint alleges that Western World emailed Colony on June 20, 2023, advising it of no coverage, and that Colony tendered to Western World on June 26, 2023—six days later. (*Id.* ¶¶ 33, 35.) The reason for this sequence of events is not clear from the complaint.

3

Colony's pursuit of a no-coverage declaratory judgment is based on its reading of the Penn-America and Century policies: it asserts that the combination of the Penn-America policy's $1 million limit (a policy Colony "suspects" provides no coverage to Kuller anyway (*id.* ¶ 37)) and the Century excess policy's exclusion for injury sustained by Phoenix's employees meant that Phoenix had failed to maintain "adequate insurance" as required by the Contractor Warranty Endorsement of Kuller's Colony policy. This conclusion was based on the endorsement's requirement that Kuller's non-scheduled contractors maintain "adequate insurance," including, as described above, commercial general liability insurance of $3 million per occurrence with no exclusions for claims arising out of "bodily injury" to the contractor's employees. (*Id.* ¶¶ 21, 38.)

On the basis of this information, on October 19, 2023, Colony advised Kuller that no coverage was available for the Underlying Action, though it would continue to defend Kuller in the Underlying Action pending a judicial determination of no coverage. (*Id.* ¶ 39.) On April 25, 2024, Colony filed its complaint in this action, which seeks that judicial determination; *i.e.*, a declaration that it has no obligation under either the primary (count 1) or excess (count 2) policies issued to Kuller to defend or indemnify it in the Underlying Action, and reimbursement from Kuller for the fees, costs, and expenses expended to defend it so far (count 3). (D.E. 1.)[4]

Kuller filed its answer and affirmative defenses on July 15, 2024. (D.E. 11, 13 (corrected version).) It then filed a third-party complaint ("TPC") (D.E. 15) against Penn-America, Century, Phoenix, and various fictitious defendants, seeking a declaratory judgment that Penn-America must provide coverage to Kuller for the Underlying Action (count 1); that Century must

---

[4] Seo and Lee are named as defendants to "bind [them] to the judicial declaration and judgment Colony seeks." (*Id.* ¶ 12.)

provide coverage to Kuller for the Underlying Action, excess to the Penn-America policy (count 2); that Penn-America and Century are liable for "equitable contribution" for defense costs and indemnification in the Underlying Action (count 3); and that Phoenix has a contractual duty to indemnify Kuller in this action and in the Underlying Action (count 4) and breached its duty to properly procure insurance (count 5).

 Kuller's TPC described the basis for those claims as follows. Kuller contracted with Phoenix for construction services, "including the construction of a drum storage facility," at the Kuller Road site in Clifton. (TPC ¶ 27 & Ex. C.) An October 12, 2020 amendment to the agreement required Phoenix to maintain general liability insurance of at least $1 million per occurrence and to name Kuller as an additional insured on the policy, and to maintain an umbrella policy with at least $5 million as excess coverage over the commercial general liability policy. (*Id.* ¶¶ 28, 29 & Ex. E.) Penn-America issued Phoenix a commercial liability policy with a $1 million per-occurrence limit, and Century issued an umbrella liability policy with a $5 million per-occurrence limit. (*Id.* ¶¶ 30-31.) On June 21, 2024, Kuller sent tender letters to Penn-America seeking coverage under Phoenix's commercial general liability policy and to Century seeking coverage under Phoenix's umbrella policy; both demands were denied. (*Id.* ¶¶ 35-39.) Kuller contends that these denials of coverage were improper. (*Id.* ¶¶ 37, 40, 50, 59.)

 Penn-America and Century have moved to dismiss Kuller's claims against them under Fed. R. Civ. P. 12(b)(6). (D.E. 28, Penn-America Mot. to Dism.; D.E. 40, Century Mot. to Dism.) Penn-America argues that Phoenix's policy with it, under which Kuller is an additional insured, contains an applicable exclusion for bodily injury. Century asserts that the excess policy it issued to Phoenix incorporated the same exclusions applicable to the Penn-America policy, and that Kuller's claims against it fail for the same reasons Penn-America offered.

5

Kuller counters that Penn-America's policy either does provide coverage or *should* provide coverage based on Kuller's "reasonable expectations," and that its pleading is sufficient to warrant discovery into the "'Why?' and 'What Happened?'" that lead to Penn-America not providing "appropriate coverage." (*See* D.E. 34, Kuller Opp. to Penn-America Mot. to Dism. 4, 11.) Because Century's motion to dismiss presumes the unavailability of coverage under the Penn-America policy, Kuller argues, Century's motion fails for the same reasons as Penn-America's motion.

After Penn-America's and Century's motions were fully briefed, Kuller moved to amend its third-party complaint, seeking to expand its case on two fronts: first, to bring a counterclaim against Colony, and second, to add claims against Jimcor Agency, Inc. ("Jimcor"), which it describes as Colony's agent. (D.E. 51.) Kuller's proposed counterclaim seeks a declaration that Colony must provide coverage (defense and indemnification) for the Underlying Action under the policy as written, or alternatively, that the Colony policy must be reformed to list Phoenix as a "designated contractor" on the Designated Contractor Warranty, and that under the reformed policy, Colony must provide defense and indemnification. (*See* D.E. 51-3, Proposed Am. TPC ¶¶ 61-71.) With respect to Jimcor, Kuller seeks to assert negligence and professional malpractice claims based on Jimcor's alleged failure to secure coverage from Colony in the form Kuller's broker requested.

Colony does not oppose Kuller's motion insofar as it adds a counterclaim for declaratory judgment that Colony has a duty under its policy to defend and indemnify. It does oppose the remainder of the motion, specifically Kuller's claim for reformation of the policy to list Phoenix as a scheduled contractor and its proposed claims against Jimcor. (D.E. 54, Colony Opp. to Kuller Mot. Amend.)

### III. Discussion

#### A. Kuller's Motion to Amend

Kuller's motion to amend is based on information it learned in discovery (specifically, in preparing its initial disclosures), namely emails between Kuller's broker and Jimcor. (D.E. 51-1, Kuller Mot. Amend Br. 1.) Kuller asserts that those emails and the insurance application submitted to Colony (all attached as exhibits to the proposed amended third-party complaint and counterclaim, see D.E. 51-13, Ex. J, and D.E. 51-14) show that its broker requested, through Jimcor, coverage from Colony that did or should have resulted in a policy covering the claims and Kuller's defense in the Underlying Action. Kuller's broker assertedly asked Jimcor for "both Premises GL and also cost to cover the GC," and the insurance application listed Phoenix as the general contractor. (D.E. 51-3, Proposed Am. TPC ¶¶ 46-48.)

In addition to the emails and insurance application, Kuller cites an endorsement captioned "Limitation of Coverage to Designated Premises, Project or Operation" in the Colony policy, which schedules the following "Project or Operation": "Owners Interest for Ground up construction of a one story fire resistive warehouse located at Lots 6 & 7, Block 15.04, Clifton, NJ 07011," and provides coverage for, *inter alia*, "bodily injury" occurring on the scheduled premises or arising out of the scheduled project or operation. (Proposed Am. TPC, ¶¶ 41-43, 64; D.E. 51-11, Ex. H (Limitation of Coverage Endorsement).) Kuller also points to the declarations page of the policy, which lists the "Classification" as "Contractors – subcontracted work – in connection with building construction, reconstruction, repair or erection – apartment or office buildings over four stories." (Proposed Am. TPC ¶ 40; D.E. 51-10, Ex. G, at 5.)

Colony opposes Kuller's request to add a reformation claim and to add claims against Jimcor.[5]  Based on that opposition and because Kuller is beyond the time to amend as of right, amendment is only available on leave of court.  See Fed. R. Civ. P. 12(a)(1), (2).  Leave "should [be] freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Denial is warranted only for "undue delay, bad faith, dilatory motive, prejudice, or futility."  *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019) (cleaned up).[6]

Colony opposes on grounds of futility.  As the parties acknowledge, the futility standard tracks the standard applicable to motions to dismiss under Rule 12(b)(6), that is, whether "accept[ing] all well-pleaded allegations as true and draw[ing] all reasonable inferences in favor of the plaintiff," the proposed pleading states a plausible claim for relief.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  If it "could not withstand a renewed motion to dismiss," leave should be denied.  *Id.* (cleaned up).

### 1. Reformation

To the extent Kuller seeks to add a reformation claim against Colony, that form of equitable relief requires "either mutual mistake or unilateral mistake by one party and fraud or unconscionable conduct by the other."  *St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden*, 88 N.J. 571, 577 (1982).  "Reformation predicated upon mutual mistake requires that both parties are in agreement at the time they attempt to reduce their understanding to writing, and that the writing fails to express that understanding correctly."  *Id.* at 579; *see also Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J.

---

[5] As earlier noted, it does not oppose Kuller's motion to amend insofar as it seeks to assert a declaratory judgment counterclaim against Colony.

[6] Because Kuller's motion to amend was filed before the pretrial scheduling order's deadline to add parties or amend the pleadings (D.E. 31), it need not also meet Rule 16's "good cause" standard.  *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).

8

2015) (McNulty, J.) ("Mutual mistake exists when the parties have 'met and reached a prior existing agreement, which the written document fails to express.'" (quoting *Bonnco Petrol, Inc. v. Epstein,* 115 N.J. 599, 608 (1989)).

Assuming the truth of Kuller's factual allegations and drawing factual inferences in its favor, it has sufficiently pleaded its reformation claim to warrant granting leave to amend. Kuller has alleged that its broker sought a Colony policy that covered the project; asked what it would cost for the policy to cover the project's general contractor; listed the general contractor's name in the accompanying insurance application; and secured a policy from Colony as a result of its requests to Jimcor, which acknowledged receiving them. Although the Designated Contractor Warranty endorsement does not list Phoenix, language elsewhere in the policy permits a plausible inference that Colony understood that coverage was to reach the general contractor. (*See* D.E. 51-10, Ex. G, at 5; D.E. 51-11, Ex. H, at 1 of 3). In other words, Kuller has plausibly alleged that it and Colony respectively, through their broker and agent, reached an agreement on coverage but that the resulting policy Colony wrote failed to adequately express their agreement in one specific way—the missing notation on the Designated Contractor Warranty endorsement. *Illinois Nat.*, 85 F. Supp. 3d at 794.[7]

Whether Kuller can ultimately prove this alleged scenario—reformation requires "clear and convincing proof" that "the contract in its reformed, and not original, form is the one that the

---

[7] Reformation can also be based on unilateral mistake plus fraud or unconscionable conduct, as noted above, and the "plus" conduct can be equitable fraud. *Bonnco*, 115 N.J. at 611 (noting that recission and reformation "[b]oth are available remedies in an action for equitable fraud"). Equitable fraud, in turn, requires a material misrepresentation or omission of fact, on which the other party relies to its detriment. *See id.* at 609 (citing *Jewish Center of Sussex County v. Whale*, 86 N.J. 619, 624-25 (1981)). Kuller references equitable fraud only in passing in its reply, and because the Court concludes the mutual mistake theory is sufficiently pleaded to permit amendment, it is unnecessary to reach whether equitable fraud is so pleaded.

contracting parties understood and meant it to be," *id.* at 794-95 (cleaned up)—remains to be seen. That ultimate burden of proof need not be carried at the pleadings stage, though Rule 9(b) does require the "circumstances constituting fraud or mistake" to be stated "with particularity." Fed. R. Civ. P. 9(b). This involves stating the "who, what, when, where and how of the events at issue." *In re Rockefeller Center Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (fraud claims) (cleaned up); *see also Ajay Endeavors, Inc. v. Divvymed, LLC*, 2023 WL 2655485, at *3 (D. Del. Mar. 27, 2023) (applying same test to pleading of mistake). Kuller's pleading does so, through a combination of the pleaded allegations and the exhibits that are attached and referenced.[8]

### 2. Proposed Claims Against Jimcor

Kuller's proposed claims against Jimcor assert negligence (proposed count 6) and broker malpractice (proposed count 7). Colony asserts that those claims are futile. (D.E. 54, at 10-12.) As Kuller points out, however, Colony lacks standing to make this argument. *See, e.g.*, *United States v. Riverside Med. Grp. P.C.*, 2024 WL 5182395, at *2-3 (D.N.J. Dec. 20, 2024) (Wigenton, J.) (current parties "unaffected by the proposed amendment" have no standing to oppose amendment adding new parties on basis of futility, as opposed to undue delay or prejudice (citations and internal quotation marks omitted)); *Conrad v. Lopez De Lasalle*, 681 F. Supp. 3d 371, 379-83 (D.N.J. 2023) (Donio, Mag. J.) (same).

Colony has not relied on any effect Jimcor's addition might have on its own rights. Nor is this a scenario in which Colony has made arguments applicable to itself that apply in equal measure to Jimcor. *Cf. Couden v. Duffy*, 446 F.3d 483, 500 (3d Cir. 2006) (affirming *sua sponte*

---

[8] To the extent Colony takes issue with Kuller's merging of declaratory judgment and reformation claims in a single count, the federal rules allow such pleading in the alternative, "regardless of consistency." *See* Fed. R. Civ. P. 8(a)(3), (d)(2), (d)(3).

grant of summary judgment as to non-moving defendants where grounds were identical to those of moving defendants, which put plaintiffs on "notice of all issues that the District Court would reach and [they] had a fair opportunity to address them in full"). Instead, Colony's argument is purely about the relationship between Kuller and Jimcor: it contends that Kuller has not and cannot plead the requisite relationship with Jimcor to give rise to a duty of care running from Jimcor to Kuller.

That is an argument for Jimcor to make once a party to the action, and ruling on those issues now, without the benefit of its arguments and Kuller's response to them, would risk "deciding a dispositive issue twice, which implicates due process and judicial economy concerns." *Riverside*, 2024 WL 5182395, at *2; *see also Conrad*, 681 F. Supp. 3d at 382 ("[A]ddressing futility at the motion to amend stage may result in two decisions on dispositive issues, whereas requiring a party to raise a futility argument on its own behalf by way of dispositive motion once brought into the case ensures that a court addresses the issue of whether a specific claim is subject to dismissal under Federal Rule of Civil Procedure 12 on only one occasion."). Kuller's motion to amend will be granted insofar as it seeks to add claims against Jimcor. Following appropriate service of process on Jimcor, it may respond as provided for in the Federal Rules of Civil Procedure.[9]

---

[9] Although Kuller's proposed claims against Jimcor, as drafted, seek damages from Jimcor (D.E. 51-3, Proposed Am. TPC ¶¶ 111, 116), Kuller's briefing frames these claims as a way to pursue reformation of the Colony policy and ultimately attain relief from Colony. (*See* D.E. 55, Kuller Reply Br. 9.) This potential discrepancy, which became apparent only in Kuller's reply and as such was not addressed in Colony's briefing, is further reason to defer consideration of Colony's substantive futility arguments until this issue and any dismissal arguments Jimcor may choose to make are competently put before the Court in appropriate motion practice. To be clear, if and to the extent Colony can articulate an argument for dismissal of the Jimcor claims that is predicated on its own rights, it may do so in response to the filing of Kuller's amended pleading.

### B. Penn-America's and Century's Motions to Dismiss

Kuller has sought coverage from Penn-America and Century as an additional insured under Phoenix's policies, and both insurers have moved to dismiss under Fed. R. Civ. P. 12(b)(6) based on a bodily injury exclusion in their policies (Penn-America directly int its primary policy, and Century by way of a provision in its excess policy that incorporates all exclusions from the primary policy).

As noted earlier, a Rule 12(b)(6) motion requires the Court to assume the truth of the pleaded factual allegations and to draw factual inferences in favor of the non-movant, here Kuller, to assess whether a plausible claim has been asserted. *City of Cambridge Ret. Sys.*, 908 F.3d at 878. The inquiry looks at whether the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and while "plausibility" does not require "probability," "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.") "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are disregarded in applying the plausibility standard. *City of Cambridge Ret. Sys.*, 908 F.3d at 878-79.

Kuller's claims against these insurers invoke Phoenix's policies, without citing specific (or indeed any) provisions, and assert that the denials of coverage were improper, without explaining why. (*See generally* D.E. 15, TPC.) In denying coverage, Penn-America cited a policy exclusion for bodily injury to employees of any insured arising out of employment with any insured or performing duties related to the conduct of any insured's business. (D.E. 28-5,

12

Ex. 3 to Penn-America Mot. to Dismiss, at pages 3-4.)[10]  This exclusion is the same basis for its motion to dismiss.

In opposing, Kuller does not directly confront this policy language or articulate how any policy language grants it coverage, but instead argues that it reasonably expected coverage based on its contract with Phoenix and that this reasonable expectation may be a basis to overcome the policy's plan language, depending on the circumstances of Penn-America's underwriting process for the subject policy.  Kuller argues that it needs, and should be allowed to pursue, discovery concerning "what occurred during the underwriting process" that resulted, "[f]or an unknown reason," in Kuller "not [being] afforded the coverage it was to have as an additional insured." (D.E. 34, Kuller Opp. to Penn-America Mot. Dismiss, at 1.)

Even accepting *arguendo* that Kuller can show why its expectations as an additional insured are permissibly considered in construing the policies,[11] its claims as drafted against these insurers still cannot withstand the motions to dismiss.  First, the theory of Penn-America's liability that Kuller has now articulated does not appear in the complaint, and a party may not amend its claims in a brief opposing a motion to dismiss. *Commonwealth of Pa. ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  Moreover, this theory is based

---

[10] The policies and the tender correspondence with Penn-America are attached to the insurers' motions to dismiss and are referenced in and relied upon in Kuller's TPC. Kuller states in passing that "when the truth of facts in an integral document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." (D.E. 34, Kuller Opp. to Penn-America Mot. Dismiss, at 6 (citation omitted)).  But it does not challenge the authenticity of the documents; its opposition is dedicated to arguing why the Court should not hold it to the plain terms of the policies (the truth or accuracy of which it does not contest, either in its complaint or briefing).  Thus, the documents are properly considered at this stage. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[11] This also assumes the correctness of Kuller's assertion that "New Jersey case law does not transfer th[e] duty" of an insured to know the contents of its own policy "from the insured who procured the policy to an additional insured," a statement it supports with no authority. (Kuller Opp., at 7.)

13

on speculation about what might have happened, with no factual predicate asserted aside from the existence of the contract between Kuller and Phoenix. (*See* Kuller Opp., at 7 ("Penn-America *may have* been on notice" of Kuller's expectations (emphasis added)); *id.* at 9 ("any request by JD Phoenix or the agent to provide insurance compatible with the [contract] and Penn-America's potential failure to provide same due to some defect in the underwriting process *could* control or bind Penn-America"); *id.* at 11 ("For whatever reason, there may have been a breakdown in the chain of communication . . . Penn-America may be obligated to provide coverage on the basis of whatever failure may have occurred.").) Kuller's argument runs headfirst into the rule that discovery is not a tool to be used to find a cause of action. *See, e.g.*, *DigitalDoors, Inc. v. Peapack Priv. Bank & Tr.*, 2025 WL 1592715, at *2 (D.N.J. June 5, 2025) (Bumb, J.) (noting that "courts cannot permit a plaintiff to 'conduct a fishing expedition in order to find a cause of action'" (quoting *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006)). As Kuller has not stated a claim against Penn-America, it likewise has not done so with respect to Century, whose policy incorporates the same exclusion and as to which Kuller has made the same arguments against dismissal.

      Kuller has requested that any dismissal be without prejudice, albeit without detail about how it would amend its claims against these insurers. *Cf. LabMD v. Boback*, 47 F.4th 164, 192-93 (3d Cir. 2022) (explaining how leave to amend is properly requested). However, in view of (1) its briefing indicating a shift in its theory of liability, (2) the Court's grant of its motion for leave to amend as to Colony and Jimcor, which may change the playing field in ways potentially material to Kuller's claims against Penn-America and Century, and (3) the reality that Kuller may already have some or all of the discovery it seeks by virtue of this case's progression since

the filing of the motions, Kuller may amend its claims as to Penn-America and Century as well if it has an appropriate basis to do so.

## IV.     Conclusion

For the reasons set forth above, Kuller's motion to amend is granted. Penn-America's and Century's motions to dismiss are granted, but without prejudice to Kuller filing an amended third-party complaint against those parties, as set forth above, within 21 days. An appropriate order will issue.

Date: June 30, 2025

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.